# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| H.O.P.E., INC., d/b/a/ HOPE FAIR HOUSING CENTER, an Illinois Not-for-Profit Corporation; KIMBERLY O'CONNOR; and TAMMY MORMINO; <br><br> Plaintiffs, <br><br> v. <br><br> EDEN MANAGEMENT LLC d/b/a EDEN SUPPORTIVE LIVING; 311 LINCOLNWAY PROPERTIES LLC d/b/a/ EDEN FOX VALLEY; 222 STATE STREET PROPERTIES LLC, d/b/a/ EDEN CHAMPAIGN LLC; CHAMPAIGN CAPITAL VENTURE LLC; MICHAEL HAMBLET JR.; MARIA DROSOS; CARLEEN CURALLI; KIMBERLY CROSS; BRUCE V. RAUNER, in his official capacity as Governor of the State of Illinois; FELICIA F. NORWOOD, in her official capacity as Director of the Illinois Department of Healthcare and Family Services; TERESA HURSEY, in her official capacity as Acting Medicaid Director for HFS; KELLY CUNNINGHAM, in her official capacity as DHFS Deputy Administrator for Long Term Care; JENNIER REIF, in her official capacity as Acting Director of the Illinois Department on Aging; and JAMES DIMAS, in his official capacity as Secretary-designate of the Illinois Department of Human Services, <br><br> Defendants. | Case No. 13-cv-7391 <br><br> Judge Joan B. Gottschall |

## **MEMORANDUM OPINION & ORDER**

Plaintiffs, Kimberly O'Connor ("O'Connor") and Tammy Mormino ("Mormino"), are

Medicaid recipients who believe they are eligible for the Illinois Medicaid Waiver Supportive

Living Program on the basis of their physical disabilities. These two plaintiffs (the "Individual Plaintiffs"), on behalf of themselves and a putative class, along with H.O.P.E., Inc. ("HOPE") (collectively, "Plaintiffs"), a private, nonprofit corporation, brought this suit against, *inter alia*, several current and former employees of the State of Illinois (collectively, "State Defendants")[1] as well as private entities ("Eden Defendants") that operate certain Supportive Living Facilities ("SLFs"). Plaintiffs allege that the State Defendants have unlawfully excluded individuals with mental disabilities from participating in the Supportive Living Program ("SLP") in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act, 42 U.S.C. § 794.

The State Defendants moved to dismiss Counts IV, V, and VI of the Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) for lack of standing and 12(b)(6) to failure to state a claim. The court granted the State Defendants' motions to dismiss, finding that Plaintiffs lacked standing to sue the State Defendants. Because the court found that Plaintiffs lacked standing, it did not determine whether Plaintiffs adequately stated claims under the ADA, FHA, or the Rehabilitation Act.

Now before the court is Plaintiffs' Motion for Leave to file their Second Amended Complaint pursuant to Rule 15(a). In addition, Plaintiffs have filed a Motion for Reassignment of Cases as Related pursuant to Local Rule ("LR") 40.4. For the reasons set forth herein, Plaintiffs' motions are granted.

## I. BACKGROUND

This court has previously laid out the facts of the case in great detail in its order granting the State Defendants' motions to dismiss. *H.O.P.E., Inc. v. Eden Management LLC*, 128 F.Supp.3d 1066 (N.D. Ill. 2015). However, a brief recitation of the facts here is necessary.

---
[1] The case caption has been updated to reflect the current office holders for the various state agency defendants.

O'Connor and HOPE filed a Complaint against the Eden Defendants and State Defendants on October 15, 2013 alleging that the Eden Defendants categorically rejected O'Connor from admission to one of its SLFs on the basis of a purported "no mental illness" policy. Count IV of the Complaint sought relief from the named State Defendants. More specifically, Plaintiffs sought injunctive relief against the State Defendants requiring them to modify their administrative rules regarding the SLP and also to modify their Home and Community-Based Services Waiver for the SLP.

Plaintiffs filed a First Amended Complaint ("FAC") on September 5, 2014 adding Mormino as a Plaintiff and expanding the claims and relief sought against the State Defendants. Like O'Connor, Mormino alleges that she was rejected from admission to one of the Eden Defendants' SLFs because she suffers from a mental illness. The State Defendants moved to dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6). The Eden Defendants answered the FAC. The State Defendants sought dismissal of Counts IV, V, and VI of the FAC pursuant to Rule 12(b)(6) on the ground that these counts failed to state claims for relief. The State Defendants also asserted that the federal court was without subject matter jurisdiction because all Plaintiffs lacked standing to sue them.

On September 3, 2015, the court granted the State Defendants' motions to dismiss pursuant to Rule 12(b)(1), finding that Plaintiffs lacked standing to sue the State Defendants. The court dismissed the claims of O'Connor and Mormino ("Individual Plaintiffs") against the State Defendants because it found that Plaintiffs did not demonstrate or properly allege a causal link between the conduct of State Defendants and the alleged injuries of the Individual Plaintiffs. The court noted that the Individual Plaintiffs did not allege that the State Defendants diagnosed them with a "severe and persistent mental illness," disqualified them from the SLP, or denied

3

them any kind of state-provided service. The court stated that, based on the allegations in the FAC and taking them as true, the Eden Defendants, not the State Defendants, caused the Individual Plaintiffs' respective harms.

Both Individual Plaintiffs allege that they called an Eden SLF, spoke with an Eden representative, and disclosed that they had a mental health diagnosis. In O'Connor's case, the Eden representative stated that Eden "could not accept" O'Connor "if she had *any* diagnosis of mental illness." [FAC, ¶ 127, ECF No. 70 (emphasis added).] The FAC also indicates that an Eden representative informed Mormino that her prior mental health screening (which stated that Mormino was suffering from a mental illness) was outdated and needed to be renewed before Eden would process her application, despite the fact that a State representative informed Mormino that another mental health screening was not necessary in order to transfer into an Eden SLF. Neither of these allegations connected the Individual Plaintiffs' alleged harm to any conduct by the State Defendants. The court noted that in order to "hold the State Defendants accountable for Eden's 'no mental illness' policy, the Individual Plaintiffs must allege that the State Defendants 'exercised coercive power or [ ] provided such significant encouragement, either overt or covert, that [Eden's policy] must in law be deemed to be that of the State.'" [9/3/15 Order, p. 15, ECF No. 171, (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).] The court stated that the Individual Plaintiffs failed to allege that State Defendants encouraged or were even aware of the Eden Defendants' alleged creation of a broad "no mental illness" policy. As a result, the Individual Plaintiffs had no standing to sue the State Defendants.

The court also found that HOPE had no standing to sue the State Defendants. An organization may have standing in its own right or as a representative of its members. HOPE asserts organizational standing only. In order to have organizational standing, HOPE was

required to point to a concrete and demonstrable injury to its activities.  Like the Individual Plaintiffs, HOPE failed to show how the State Defendants caused it any injury.  Rather, HOPE's alleged injury—the impairment of its ability to provide counseling—was the result of the conduct of the Eden Defendants.  [9/3/15 Order, pp. 17-18, ECF No. 171.]

On September 24, 2015, Plaintiffs filed their motion for leave to file a Second Amended Complaint ("SAC").  [Mot. for Leave to File SAC, ECF No. 173.]  In their motion, Plaintiffs allege that the SAC addresses the issue of standing by drawing a link between the State Defendants' conduct and the alleged injuries suffered by Plaintiffs.

## II. DISCUSSION

### A. Motion for Leave to File a Second Amended Complaint

Rule 15(a) provides that after a responsive pleading has been served, a party may amend its pleading "with the opposing party's written consent or the court's leave."  Rule 15 also requires that leave to file an amended complaint be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a).  The Supreme Court has interpreted Rule 15(a) to mean that leave to amend should be allowed except in circumstances involving: (1) undue delay; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; or (4) futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, the State Defendants argue that the amendment is futile because none of the allegations in the proffered amendment supplies the missing elements demonstrating Plaintiffs' standing to sue.[2]  The court analyzing a proffered amendment applies the same standard for leave to amend as on a Rule 12(b)(1) or 12(b)(6) motion to dismiss.

---

[2] The HFS Defendants also argue that allowing the proffered amendment would prejudice them.  [HFS Defs. Response to Mot. for Leave, pp. 13-15, ECF No. 183.]  The court finds this argument unpersuasive.  Although the parties have engaged in extensive discovery, discovery is not yet closed and a closing date has not yet been set.  That

Under Rule 12(b)(1), a court must dismiss a claim if it lacks subject-matter jurisdiction over it. *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."). When deciding whether the court has subject-matter jurisdiction, the court accepts "as true all facts alleged in the well-pleaded complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012) The court, however, "may look beyond the pleadings if necessary to determine whether subject-matter jurisdiction exists." *Revelis v. Napolitano*, 844 F.Supp.2d 915, 919 (N.D. Ill. 2012) (citing *Hay v. Ind. State Bd. of Tax Commis.*, 312 F.3d 876, 879 (7th Cir. 2002)).

In this case, the State Defendants assert that Plaintiffs have not corrected the deficiencies identified in their FAC and therefore continue to lack standing to pursue Counts IV, V, and VI of the SAC. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To meet the minimum standing requirements of Article III, a plaintiff must prove three elements: (1) he or she suffered a concrete and particularized injury that is actual or imminent; (2) the injury is fairly traceable to the defendant's action; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. The court finds that Plaintiffs have adequately addressed the issue of standing in their SAC.

Defendants are correct in asserting that Plaintiffs have not alleged in their SAC that the Individual Plaintiffs participated in any State-conducted mental health screening that barred them

---

further discovery *may* be required is not a surprise to Defendants, nor does it prejudice them. Finally, while new discovery may delay "the matter for several months," [*Id.* at 15] the parties are not even at issue yet.

from entry into any of the Eden SLFs. Defendants are also correct in stating that the court has already rejected Plaintiffs' theory of "inevitability"—that even if the Individual Plaintiffs had received a State screening, they would have been rejected anyway—as a predicate for federal jurisdiction. However, the court finds that Plaintiffs, at this stage, have adequately alleged that the State Defendants "exercised coercive power or [ ] provided significant encouragement, either overt or covert, that [Eden's policy] must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). In their SAC, Plaintiffs allege the following:

  i. SLFs operate under the State's rules regarding the SLF program, and the State Defendants monitor, review and enforce compliance with these rules. [Mem. in Support of Mot. for Leave to File SAC, Ex. A, ¶ 68.]

 ii. SLF applicants, like Plaintiffs, cannot directly apply to or through the State, although they may receive information about the SLP or particular SLFs from State Determination of Need ("DON") screeners. [Mem. in Support of Mot. for Leave to File SAC, Ex. A, ¶ 69.]

iii. The preadmission screening and resident review ("PASRR") screening employed by the State discriminates against persons with mental disabilities by presuming ineligibility, failing to provide for consideration of their actual suitability for SLF services, and failing to provide the full benefits of a complete Mental Health Level of Care Division of Mental Health ("DMH") determination. [Mem. in Support of Mot. for Leave to File SAC, Ex. A, ¶ 79.]

 iv. The State of Illinois SLP is unlawful under Title II of the ADA, Section 504 of the Rehabilitation Act, and the Fair Housing Act because it discriminates against individuals with mental health diagnoses who seek to live n SLFs by communicating to SLFs, who are licensed and regulated by the State, that applicants with a diagnosis of mental illness should be ruled out, regardless of the degree of the mental illness, which is in direct contravention to the State's written rules and regulations. [Mem. in Support of Mot. for Leave to File SAC, Ex. A, ¶ 89(h), (k), (p).]

  v. The State provided no recourse for notice, hearing, appeal or reversal of the summary determination of the Eden Defendants to unlawfully reject the Individuals Plaintiffs' applications for SLF housing and services. [Mem. in Support of Mot. for Leave to File SAC, Ex. A, ¶¶ 219A, 226A, 232A.]

Although not required at this stage of the litigation, Plaintiffs have provided documentary evidence to support their position that the State Defendants communicated to the Eden

7

Defendants a policy whereby *all* individuals with mental illnesses, not just those with severe or persistent mental illnesses, should be rejected from participating in the SLFs. [Mem. in Support of Mot. for Leave to File SAC, Ex. K ("By legislation SLF are not to admit anyone who has a mental illness.").] In sum, the Individual Plaintiffs have alleged the following: (1) they have suffered an injury in the form of rejection from the SLF; (2) the injury is fairly traceable to the State Defendants' action of promulgating and enforcing a "no mental illness" policy for the SLFs; and (3) it is likely that the injury will be redressed by a favorable decision through injunctive relief whereby reforms to the State screening process and suitability determinations are ordered. These allegations (and accompanying exhibits) demonstrate that the Individual Plaintiffs have standing to sue the State Defendants.

HOPE likewise has organizational standing to sue. The court has previously noted that in order for HOPE to establish organizational standing, it must show that it suffered an "actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *See Equal Rights Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011) (quoting *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)). To accomplish this, HOPE must point to a "concrete and demonstrable injury to [its] activities;" a mere "setback" to its "abstract social interests" is not sufficient. *Id.* In the Seventh Circuit, "the only injury which need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against [the defendant's] discrimination," for such resources are the "opportunity costs of discrimination…" *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990).

HOPE has adequately alleged that its expenditure of resources was traceable to the State Defendants' conduct. More specifically, HOPE, at the behest of the Individual Plaintiffs, investigated the Defendants' discriminatory conduct. As part of its investigation, HOPE used a tester in January 2013 to call the Eden location that O'Connor had previously contacted. The HOPE tester left a message for an Eden representative, who later returned the call and verified that Eden had a "no mental illness" policy. HOPE subsequently used additional testers in August 2013 and November 2013 to call other SLFs to probe whether they, too, had a "no mental illness" policy.

The court recognized that HOPE may have diverted resources as an "opportunity cost" of the Eden Defendants' alleged discrimination, but that the FAC did not demonstrate how the State Defendants caused HOPE any injury. For the same reasons already noted above, HOPE has adequately pled that the actions of the State Defendants, notably their act of allegedly promulgating and enforcing a "no mental illness" policy for the SLFs, has caused harm to HOPE. HOPE, therefore, has standing.

Finally, the court declined to rule on Defendants' Rule 12(b)(6) motions to dismiss Plaintiffs' FAC because it was unnecessary—the court had decided that Plaintiffs had no standing to sue the State Defendants. "A motion under 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 635 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion to dismiss, the complaint must have "facial plausibility," which occurs "when the plaintiff pleads factual

9

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009). In addition, on a defendant's motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

Because the proposed amendments substantively alter the allegations and legal theories put forward by Plaintiffs relative to the State Defendants, the arguments made in the Defendants' original Rule 12(b)(6) motions may be inapplicable. In their responses in opposition to Plaintiffs' motion for leave to file their SAC, Defendants either refer the court to their earlier briefs or restate the arguments made in their respective motions to dismiss. [Non-HFS Defs. Response to Mot. for Leave, p. 10, ECF No. 182 (refers the court to their earlier motion to dismiss); HFS Defs. Response to Mot. for Leave, p. 11, ECF No. 183 (restates the 12(b)(6) arguments made in their original motion to dismiss).] In addition, as detailed below, the court will inherit three more cases relating to the State Defendants' alleged discriminatory SLP policy. Therefore, the parties will be given in an opportunity to file their respective responses to the SAC, which may include a Rule 12(b)(6) motion to dismiss for failure to state a claim. However, at this stage, the court cannot say that the proposed amendment would be futile. Plaintiffs have certainly satisfied the pleading requirements of Rule 8. Whether those claims can withstand a motion to dismiss by the State Defendants on grounds other than lack of standing cannot be determined at this point with the briefs currently on file. The court declines to make that determination at this stage.

**B. Motion for Reassignment of Cases as Related**

As noted, Plaintiffs filed the instant action against the Eden Defendants and the State Defendants on October 15, 2015 and filed their FAC on September 3, 2014. On November 2,

2015, HOPE filed three new complaints based on extensive state-wide testing by HOPE also alleging that persons with mental health disabilities and diagnoses have been discriminated against by three additional Supportive Living Facilities when seeking housing and services through the State of Illinois SLP. *H.O.P.E. Inc. v. Tabor Hills, et al.*, No. 15 C 9719 (Darrah, J.); *H.O.P.E. Inc. v. Alden Gardens, et al.*, No. 15 C 9715 (Pallmeyer, J.); *H.O.P.E. Inc. v. East Gate Manor, et al.*, No. 15 C 9717 (Shah, J.). As in the present case, HOPE has sued two groups of defendants in the aforementioned actions: (1) the same State Defendants sued in the present case who control and administer the SLP; and (2) the respective SLP operator (and related individuals) at the site at which HOPE's tester inquired. HOPE contends that the substantive claims asserted in the three new cases are identical to the substantive claims asserted in the present case, namely, the claims for violation of the Fair Housing Act, the ADA, and the Rehabilitation Act by excluding persons with mental health conditions or diagnoses who seek housing and services through the State of Illinois SLP.

In order to have a case reassigned based on relatedness, the movant must satisfy Local Rule 40.4(a) and (b). *Donahue v. Elgin Riverboat Resort*, 2004 WL 2495642, *1 (N.D. Ill. Sept. 28, 2004) (citing *Lawrence E. Jaffe Pension Plan v. Household International*, 2003 WL 11757, *3 (N.D. Ill. May 5, 2003)). The Seventh Circuit has been critical of the district court for not consolidating before a single judge a number of cases filed by a single law firm and in which there was "substantial overlap" of issues and parties. *See Smith v. Check–N–Go of Illinois, Inc.*, 200 F.3d 511, 513 n.* (7th Cir.1999). Local Rule 40.4 (a) provides the following:

> **(a) Definitions.** Two or more civil cases may be related if one or more of the following conditions are met:
> 
> **(1)** the cases involve the same property;
> 
> **(2)** the cases involve some of the same issues of fact or law;
> 
> **(3)** the cases grow out of the same transaction or occurrence; or

11

> **(4)** in class action suits, one or more of the classes involved in the cases is or are the same.

Local Rule 40.4(a).

Here, Local Rule 40.4(a) is satisfied because the cases involved some of the same issues of fact and law. More specifically, the cases allege the rejection of persons with mental disabilities by Illinois SLFs based on the State Defendants' alleged "no mental illness" policy. However, in order for reassignment to be proper, Local Rule 40.4(b) must also be satisfied. Local Rule 40.4(b) provides the following:

> **(b) Conditions for Reassignment.** A case may be reassigned to the calendar of another judge if it is found to be related to an earlier-numbered case assigned to that judge and each of the following criteria is met:
> **(1)** both cases are pending in this Court;
> **(2)** the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;
> **(3)** the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and
> **(4)** the cases are susceptible of disposition in a single proceeding.

Local Rule 40.4(b).

There is no question here that 40.4(b)(1) is satisfied—all four cases brought by HOPE are pending in the Northern District of Illinois. In addition, 40.4(b)(3) is satisfied. Although the State Defendants argue that reassignment will substantially delay the instant case, the reality is that all four cases are still in the pleading stage. While discovery in the instant case has commenced, there is no indication that the parties are at or near completion of discovery. While some delay might result, the cases are not at significantly different stages. The real question, then, is whether the second and third prongs for Local Rule 40.4(b) are satisfied.

The court concludes that the handling of all these cases by the same judge is likely to result in a substantial saving of judicial time and effort as reassignment will permit the issues to be briefed and determined once, rather than multiple times. The cases are also susceptible of disposition in a single proceeding. The key and common question, as the court sees it, is two-fold: (1) whether the State of Illinois institutes and enforces a "no mental illness" policy for its SLFs; and (2) whether that policy violates the Fair Housing Act, the ADA, and/or the Rehabilitation Act. The common issues of law and fact, including any application of the State's alleged discriminatory policy, can be resolved in a single proceeding even if some additional facts also have to be determined as to each individual private defendant. The fourth criteria is satisfied.

Plaintiffs' motion for reassignment based on relatedness is granted. Prior to the next status hearing, the parties shall meet to determine whether this court's ruling on standing controls the standing motions in the newly added cases and, if so, whether they wish to make a Rule 12(b)(6) motion.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for leave to file their second amended complaint [173] is granted. In addition, Plaintiffs' motion for reassignment of cases as related [185] is granted. Status is set for August 5, 2016 at 11:00 a.m.

Date: July 27, 2016 /s/

Joan B. Gottschall
United States District Judge

13